JUSTICE RICE,
concurring in part and dissenting in part.
¶47 For the reasons expressed herein, I concur with the Court’s exercise of original jurisdiction, concur with the conclusion that groundwater is included within the Tribes’ reserved rights, dissent from the enjoinment of the issuance of the Lang permit, and would decide the contempt issue by holding that the charged individuals have not acted contemptibly.
¶48 The use of water resources is undeniably linked to civilization’s advancement and indeed, its survival. However, for the many people who must live and survive on the Flathead Reservation in Montana, for whom this issue is critical, this Court has brought adjudication of water rights to grinding halt. More extremely, it has even barred the issuance of provisional water use permits. It has rebuffed the Legislature’s attempt to resolve water questions in a manner that respects all water rights. It has barred state officials from discharging their constitutionally-mandated duty to address water issues for the benefit of Montana citizens. Its successive decisions in this matter, which are legally artificial and disassociated with any practical reality, have created for our citizens a monumental impasse. It is as if the Court believes that water has simply stopped flowing, and government can suspend regulating, and people can postpone pursuing life’s necessities, until all water is either adjudicated or negotiated in the manner it *434 deems appropriate.
¶49 The state officials named here have attempted, and must continue to attempt, as is their duty, to administer the use of water in this state. They have attempted to do so in a manner that does not violate this Court’s decisions, and in accordance with the directives of the Legislature, which has also attempted to respond in accordance with this Court’s decisions. However, the officials’ actions have alarmed the Tribes, who understandably draw the conclusion from this Court’s decisions that water adjudication and permitting must cease altogether, and therefore read malicious motives into the officials’ actions, causing them to make a remarkable contempt charge in a petition for original jurisdiction. That has been followed by a series of accusations and counter-accusations between the parties. Extraordinarily, Respondent attorneys have been relieved of their duties in this matter and have been silenced in regard to issues with which they have been intimately involved for many years, depriving this Court of their expertise in conducting its review. The State has been forced to engage new counsel. How has this all come about? Who is at fault? The answers to these questions are really quite simple. The crisis before us today, as is painfully obvious, is the end result of none other than the decisions issued by this Court. We have met the enemy, and it is us.
¶50 I concur with the Court’s exercise of original jurisdiction herein. I agree that the Tribes’ reserved water rights are of statewide importance. To the consideration of this requirement for the exercise of original jurisdiction, I would add that the Tribes’ status as a sovereign nation carries with it a presumption that legal issues which broadly affect the people, resources or general welfare of the reservation are vital to the state as a whole, have statewide impact, and are particularly suitable for the exercise of original jurisdiction. Further, the exercise of original jurisdiction is compelled, and I would so grant, in order to resolve the intergovernmental stalemate between State and Tribes over the use of water that has arisen because of the decisions of this Court.
¶51 The Court’s decision in Ciotti was based on a statutory interpretation of the Water Use Act that was, at least, plausible, and to which I will defer, although clearly subject to debate. See Ciotti, 278 Mont. at 70, 923 P.2d at 1085 (Turnage, C.J., dissenting.) What was alarming about the Ciotti decision was the result that the Court’s statutory interpretation required: “a shutdown of the water permitting process in Montana.” Ciotti, 278 Mont. at 70, 923 P.2d at 1085 (Turnage, C.J., dissenting).
¶52 Addressing this obvious calamity, the Legislature immediately *435 responded to Ciotti by enacting S.B. 97, therein revising the statute which the Court said had mandated its decision. The Legislature removed disputed paragraph (l)(e) of § 85-2-311, MCA, which had allowed the Department to make a finding, after receiving evidence, that unappropriated water existed which was in excess of Tribal rights. The Ciotti Court had interpreted the provision to require proof that a proposed use would not interfere with Tribal rights, but because the Department’s procedure did not adequately account for Tribal rights, this burden of proof could not be met until the Tribes’ rights had been quantified. Thus, in response, the Legislature clarified its intention that provisional water permitting should continue pending finalization of the adjudication process, deleted the concept of “unappropriated water,” and created a broadly inclusive process to allow the issuance of provisional water permits if the applicant could establish that water was both physically and legally available. The Legislature, consistent with the constitutional mandate to protect all existing rights, included Tribal rights within the definition of existing rights. In enacting these provisions, the Legislature fulfilled its constitutional duty to protect all water rights within the state while at the same time fulfilling its undisputed duty to the welfare of all Montanans to administer water resources for beneficial purposes.
¶53 The enactment of S.B. 97 was a legitimate, and in my view, successful effort to cure the very problems in the statutes which the Ciotti Court had cited. This Court, however, was undaunted by the Legislature’s effort to restore water permitting, and once again enjoined that process in Clinch. The basis for the Court’s holding was that the process of establishing legal availability under S.B. 97 was impossible because (1) legal availability was insufficiently defined, and (2) as stated in Ciotti, Tribal rights were not the same as state water rights, could not be quantified in the same way, could not be protected, and therefore, all water permitting had to be enjoined.
¶54 Clinch was erroneously decided. First, the Court simplistically faulted S.B. 97 because “ ‘[l]egally available’ is not defined... other than in the circular three-part test.” Clinch, ¶ 15. There is no precedent for the proposition that circuity in a statute’s wording is fatal to its intended implementation, and if that were true, many other statutes would have suffered the same fate. The statute’s definition of legal availability, which required an analysis of all physical and legal demands, combined with its specific protection of reserved rights, should have been found to be sufficient. Secondly, the Court offered what has become its tired and ill-founded mantra, which, reduced to its essence, is this: because reserved rights are different, they cannot be *436 quantified. The Court apparently assumes that it possesses expertise in water rights necessary to make such a determination without a factual record, because it has never required a record to reach this conclusion. The statutes, and the regulators who administer the statutes, claim these various rights can be determined. Obviously, reserved rights are different from appropriated rights; but I will not be so bold as to presume that this difference precludes a proper determination of those rights until I have had the opportunity to review evidence on the issue. Indeed, the Court in Clinch was “in effect, entering a permanent injunction without holding a factual hearing.” Clinch, ¶ 29 (Rodeghiero, J., dissenting). Consequently, the holding in Clinch defied reality: “The practical consequences of the majority’s decision will be significant and will deprive some Montana citizens of one of life’s basic necessities, the use of water.” Clinch, ¶ 33 (Rodeghiero, J., dissenting). On the basis of a proper statute, with its emphasis on preserving all constitutionally protected rights, including Tribal rights, the Court in Clinch should have allowed the Department to proceed. Its failure to do so set the stage for the conflict before us today.
¶55 So, once again we find a similar question before the Court, this time specifically addressing groundwater. Given the precedent presented by the Tribes on the issue, I concur with the Court’s conclusion that groundwater is included within the Tribes’ reserved water claims. But that issue is of small consequence here. The larger issue is that the Court is attempting to dam up the entire process until it gets the result it wants. The Court is fooling itself if it believes that this decision has plugged the fined leak in the legal dike. Water will simply not stop flowing, and Montanans will simply not stop needing it. The demands of humanity will bring the issue back.
¶56 I would not hold the officials involved in this matter in contempt for attempting to do their statutory and constitutional duty in a maimer that was, arguably, consistent with this Covert’s prior decisions. I would expect nothing less from creative officials and zealous lawyers who were required to balance duty and precedent.
¶57 I would decline to enjoin the issuance of the Lang permit. Doing so would bring to the forefront a critical issue, long dormant, regarding jurisdiction. The Tribes have reserved this issue for federal review. The . federal court system is the most appropriate forum for resolution, and should have been addressed long ago by the federal courts. In this regard, I agree with the following portion of Justice Leaphart’s concurring opinion in Ciotti:
The federal courts, however, have failed to reckon with the fact *437 that the federal question (whether the tribes are constitutionally exempt from the Montana Water Use Act) presents a threshold question of jurisdiction; i.e., whether the state of Montana has any jurisdiction to apply its Water Use Act in the first instance. That fundamental question of state jurisdiction must be addressed first.... It is the state court which should be awaiting resolution of the jurisdictional question in federal court, not vice versa.
Ciotti, 278 Mont. at 65, n.1, 923 P.2d at 1082, n.1 (Leaphart, J., concurring). The federal courts have placed us in a difficult position, giving us enough rope to hang ourselves and thereby contributing to this mess. Their help in getting us back out would be appreciated. The Tribes should not be allowed to continue to “run with the hare and hold with the hounds” on this issue. Ciotti, 278 Mont. at 66, 923 P.2d at 1083 (Leaphart, J., concurring).
¶58 Understandably, the Tribes would be concerned about the issuance of a permit, even a provisional one, that could potentially impose upon their rights. However, they would not be without various remedies, only one of which is the federal courts. The same cannot be said for Mr. Lang. Despite its professed concern over the provision of remedies, the Court has afforded him, and the many others like him who live on the reservation and need to use water, no remedy whatsoever. Despite statutes providing for the deliberate consideration of Lang’s application and all other water rights that may be affected thereby, he and many other Montanans have been deprived, by this Court, of the opportunity to proceed in any manner. That is simply regrettable.